## INVASION OF A TELEPHONE FIELD BY A COMPETING COMPANY.

Common Pleas Court of Paulding County.

THE PAULDING HOME TELEPHONE COMPANY v. PAULDING MUTUAL TELEPHONE ASSOCIATION.

Decided, July 22, 1913.

*Telephones—Action to Prevent Competing Company From Entering Municipality—Capacity of Senior Company to Maintain Action— Telephone Companies as Public Utilities or Private Enterprises— Effect of Ordinance Granting Franchises—Section 614-52.*

1. An established telephone company has capacity to maintain an action to prevent the invasion of its field by a competing company which has not secured from the Public Utilities Commission a certificate that the exercise of such a license is proper and necessary for the public convenience.

2. The passage of an ordinance granting the right to supply telephone communication to the public within the limits of the municipality is sufficient to bring the company accepting such ordinance within the public utilities act.

3. A telephone company is either a public utility or a private enterprise; if the former, it is under the jurisdiction of the Public Utilities Commission and can not proceed without securing a proper certificate therefrom; if the latter, it does not possess the power of eminent domain and is without power to appropriate to its use the streets, alleys and public ways of a municipality.

*Snook & Wilcox,* for plaintiff.
*E. E. Edge* and *Dailey & Hoke,* contra.

MATTHIAS, J.

Heard on demurrer to petition.

The plaintiff asserts that it is now, and has for many years, furnished telephone service to the citizens of the village of Paulding and the public, under a franchise duly granted, and that it has, and does now operate a telephone exchange, and has furnished and is still furnishing adequate telephone service; that on March 4th, 1912, an ordinance was passed by the council of said village, which is set out in the petition, the terms of which were accepted by the defendant company, in writing. The authority conferred upon the defendant, or attempted to be conferred, by said ordinance, is "to erect, place and maintain on the streets, alleys and public ways of said village the poles, fixtures, cables and wires necessary to supply the citizens of said village, and to the public, communication by telephone or other improved electrial or magnetic device." Elsewhere in said ordinance, set out in the petition, the construction authorized is referred to as a "telephone system." It is averred that the defendant has purchased part of its equipment and is about to commence the construction of a telephone plant and lines in said village, and threatens to and will construct such plant unless restrained by order of the court, and that it will own and operate a telephone plant in said village for the furnishing of telephone service to the citizens of said village and the public, without securing from the Public Service Commission of Ohio a certificate that the exercise of such license, permit, right or franchise is proper or necessary for the public convenience; that the defendant has not secured such certificate,

nor has it made any application therefor; that the construction of said plant by the defendant, in the manner proposed, will interfere with the use and operation of plaintiff's plant and with the proper and necessary replacements and extensions thereof; that the defendant threatens to and will solicit and secure a part of plaintiff's patrons to discontinue the telephone service of the plaintiff, and thereby reduce the efficiency of plaintiff's service, and render such service inadequate for the use of the citizens of said village and the public; to the great and irreparable injury of the plaintiff and for which it has no adequate remedy at law.

The defendant demurs to the petition of the plaintiff upon two grounds: First, that the plaintiff has not the legal capacity to sue; and second, that the petition does not state facts which show a cause of action. We are clearly of the opinion that the plaintiff may maintain this action; that is, the plaintiff has capacity to sue. We find but two reported cases involving a construction of the Public Utilities Act, found in Vol. 102 O. L., page 550. In each of these cases, the action was brought by the senior telephone company. In neither of them, apparently was the question of capacity to sue raised. Surely the established telephone company has the capacity to sue, when its rights and interests are so vitally affected by the alleged proposed action, as is shown in the petition. Undoubtedly if the defendant company is within the jurisdiction of the Public Service Commission, the plaintiff is entitled to maintain this suit, because the proposed action of the defendant would be the direct invasion of a right secured to the plaintiff by said act of Legislature, and we think even if the defendant is not amenable to the provisions of such act, still that the plaintiff may properly bring this action, for the reason that it is directly affected by the action complained of, and in a manner different from the public generally.

In support of this proposition we cite the decision in the case of *Beartlesville Electric Light & Power Company* v. *Beartlesville Interurban Railway Company*, 29 L. R. A. (N.S.), page 77, and many cases there cited, recognizing the right of a company hold-

ing such a franchise to maintain an action to restrain the invasion of such right by any person or company attempting to exercise such right in competition with the senior company without legislative or municipal authority, although its franchise is not exclusive.

It does not appear in the petition of the plaintiff that the defendant is a public utility, organized for profit. It is contended by the defendant that, because it a public utility not for profit, it can not be required, as a condition precedent to the construction and operation of telephone lines and a telephone system in the village of Paulding, to procure a certificate of authority from the Public Service Commission of the state, and urges that it comes within the express exception stated in Section 4 of said act.

It is our view that the passage of the ordinance set out in the petition, and to which we have referred, and the acceptance of its terms by the defendant company, whereby it undertook to supply communication by telephone to the citizens of said village and the public as averred in the petition, is sufficient to bring the defendant company within the operation of the act referred to, and therefore sufficient to state a cause of action. This entire act must be construed as an entirety, and, under the rules governing the construction of statutes, specific provision must be considered as a modification of or exception to a general provision in the same act.

Section 54 of this act refers particularly to telephone companies. Its language is plain and specific. It provides that:

"No telephone company shall exercise any permit, right, license or franchise that may have been heretofore granted, but not actually exercised, or that may hereafter be granted to own or operate a plant for the furnishing of any telephone service, thereunder in any municipality or locality, where there is in operation a telephone company furnishing adequate service, unless such telephone company first secures from the commission a certificate, after public hearing, of all parties interested that the exercising of such license, permit, right or franchise is proper and necessary for the public convenience."

We are somewhat impressed with the finding of the Public Service Commission that it has not jurisdiction over a corporation not for profit and that a telephone company incorporated not for profit has no capacity to maintain an action against another company, yet it seems to us that by such finding the commission disregards the plain, express and specific provisions of Section 54 of this act. Surely the defendant company must finally take the position that it either is a public utility or that it is not; that it is either a public service corporation or a private enterprise operating for the mutual convenience of its members. If the former, it is our notion that the Public Service Commission has jurisdiction; if the latter we do not believe it has the power of eminent domain, which is essential before it can exercise the right of use of streets and alleys and public highways.

We have said that, so far as we are aware, but two cases have been before the courts of this state, in which decisions are reported affecting any question involved in this case. The first was in the Court of Common Pleas of Clinton County, and is found in 13 N.P.(N.S.), 61. In that case the contention was between telephone companies growing out of the extension of one into the territory occupied by the other. But no question we have in the case at bar is there decided. The other case is found on page 429 of the same report, being in the Licking Common Pleas. The court say in that case:

"A certificate from the Public Utilities Commission is not necessary to authorize a telephone company to carry on a telephone business unless the company seeking to exercise some license or franchise, and proof of the incorporation of a telephone company and the purchase of   *   *   *   telephone instruments and some poles, cross-arms, wires, etc., is not sufficient to sustain an allegation that the company is about to exercise a franchise and engage in a public service as distinguished from providing private lines for the use of stockholders and others residing within a short distance."

It was contended by the defendant company, in that case, that it was not required to procure a certificate from the Public Serv-

ice Commission because it was not seeking to exercise any right, license, permit or franchise; and that it was only where a company or person has a franchise for a certain purpose that it is necessary to secure a certificate from the Public Utilities Commission. The court gave consideration to the question as to whether the defendant was a public service corporation. Poles, wires, switch-board, some cross-arms, and fifty telephones had been purchased. The switch-board had been placed in the village of Brownsville, an unincorporated village, poles were erected but no wires strung or telephones installed. The court say by what right the company had erected its poles along the public highway does not appear, but no part of their supposed line was within a municipal corporation. Their purpose was to secure means of communication among about fifty residents of that vicinity. There was no proof that they contemplated any long distance connection or service. They had organized a company to construct a telephone plant for their own use and convenience, and for the purpose of affording them means of communication with each other. The court concludes that the evidence was not sufficient to sustain the allegation that the defendant was about to engage in the public service; that the proposed telephone system of the defendant, so far as the evidence showed, was merely a private telephone plant for the use of the stockholders of the defendant company. This case was presented on appeal to the Circuit Court of Licking County and a similar conclusion reached, which is announced in 15 C.C.(N.S.), 508.

The conclusion of the circuit court is based upon the fact that the defendant company was created as a corporation some two or three months prior to the enactment of the Public Utilities Law, and therefore, had not only the right to exist as a corporation known as the primary franchise, but that it also had at that time the right to build and operate a telephone line by virtue of its charter, and that this right carried with it the power and authority to do whatever might reasonably be necessary to be done in order to carry out the provisions of such charter. The court say that whether or not such telephone line was to be

operated for the public so as to constitute it a public carrier
and thereby make it subject to the jurisdiction and control of
the Public Service Commission, might be a disputed question,
and that it can not be doubted that any number of persons may
associate themselves together and construct and use a telephone
line and station for their own immediate use, and not otherwise,
and that such a corporation would not be a public utility.    The
court say that the evidence in that case did not show whether
the defendant intended to operate as a public utility, or simply
as the owner of private property for private purposes.    It is
apparent that in that case the holding was for the defendant's
company upon the ground that its right had vested prior to the
enactment of the Public Utilities Law, and therefor the act should
not apply to it, and further, that it could not apply until it
was shown that the defendant intended to operate its lines as a
public utility, and not for private purposes only.

In the case at bar the averments of the petition show that the
defendant company has manifested a purpose to furnish tele-
phone service to the public, and in pursuance of such purpose has
sought and received from the council of the village of Paulding
a so-called franchise, authorizing it to construct and maintain
a telephone system, for such purpose, in said village.    In the
case we have just discussed the fact appears, and that is rather
emphasized by the trial court, that the lines of the defendant
company, nor any part of them, were constructed or sought to
be constructed within a municipal corporation.    It is well settled
that a telephone company secures the right to go upon the streets
of a municipality with its poles and wires from the state, and,
as well stated in *Farmer* v. *Telephone Company*, 72 O. S., 532,
the power of municipal authorities in the premises is merely to
agree upon a mode of use, and if no agreement be made within
a reasonable time the company may apply to the probate court,
which court shall direct the mode of construction, which shall
be such as not to incommode the public in the use of the streets.
The right thus conferred by the laws of the state is the right of
eminent domain, and involves an attribute of sovereignty.    It

is conferred upon what are known as public service companies and, in the operation of what· are known as public utilities. Certainly such power is not delegated to any company or combination of persons in the execution of a mere private enterprise.

Upon this subject we direct attention to the following cases: *Telephone Co.* v. *Columbus Grove*, 8 C.C.(N.S.), 81; *Zanesville v. Telephone Co.*, 64 O. S., 67; *Telephone Co.* v. *Cincinnati*, 73 O. S., 64; *Railroad Co.* v. *Cincinnati*, 76 O. S., 481.

We refer also to *Lewis on Eminent Domain,* Section 250, and following sections. It is there stated by the author that, ''only a few of the state constitutions in terms prohibit the taking of private property for private use; all courts, however, agree in holding that this can not be done.'' Surely the defendant would not claim that it can take public property for private use. We call attention particularly to Section 313 of Lewis on Eminent Domain, which we quote in full:

''To constitute a public use the public must have a legal right to the use or service for which the property is taken. Where property is taken by private corporations or individuals it must not only appear that the purpose of the taking is a public use, but also that the public have a right to that use independent of the will of the condemning party. 'The service proposed,' says the court in one case, 'must be such as every individual member of the community, similarly situated, shall have the right to demand and receive upon like conditions as any other member, whether the corporation would accede to the bidding or not. The community might be large or small, or the service might be limited to a few, or extended to many; but within the compass of the proposed service every individual similarly situated should be entitled to it as of right upon like conditions; otherwise it is hardly conceivable how such an institution could be considered a public service corporation. If it may serve whom it pleases and deny whom it pleases, although those it accommodates may be a part of the general public, the service becomes of private consequence merely, and the real public is ignored. So that, unless all may, under like and similar conditions and circumstances, demand and receive as of right, it is not a public, but a private service.' Thus where a corporation was authorized to create water power or

electricity for its own use or the use of others, it was held that it could not condemn, as it was optional with the company whether it would serve itself or the public. But where the authority is general, to provide and furnish a power or service, and the power of eminent domain is conferred, there is an implied obligation to serve the public on demand and impartially, and the use is held to be a public use. 'The delegation of the power of eminent domain to a corporation is not always accompanied with an express imposition of the obligation to serve the public reasonably and equitably. A corporation by the acceptance and exercise of the power impliedly undertakes such service respecting the subject for which the power is exercised.' "

Upon the question of the right of a mutual telephone company to occupy a public street, without authority, we also cite *Fanning v. D. M. Osborn et al,* 102 N. Y., 411. This decision also supports the view that the plaintiff may maintain this action.

The defendant company is either a public utility or a private enterprise. If the former, unquestionably the Public Service Commission has jurisdiction and it can not proceed until it shall have secured from the commission a proper certificate; if the latter, it does not possess the power of eminent domain, which is essential before it can appropriate to its use the streets, alleys and public ways of said village.

The demurrer is therefore overruled.